IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.  10-cv-01633-WYD-BNB

HEALTHONE OF DENVER, INC., and
HCA-HEALTHONE LLC,

     Plaintiffs,

v.

UNITEDHEALTH GROUP INCORPORATED,

     Defendant.

---

## ORDER

---

I.    <u>INTRODUCTION</u>

THIS MATTER is before the Court on Defendant's Motion to Dismiss filed on August 24, 2010.  Defendant UnitedHealth Group Incorporated ("United") seeks to dismiss Plaintiffs' Colorado Consumer Protection Act ("CCPA") claim and unfair competition claim pursuant to Fed. R. Civ.  P. 12(b)(6) and 9(b).  Plaintiffs HealthONE of Denver, Inc. and HCA-HealthONE LLC filed a response to United's motion on October 18, 2010.  United filed a reply brief on November 11, 2010.  For the reasons stated below, I find that United's motion to dismiss must be denied.

II.    <u>BACKGROUND</u>

On July 9, 2010, Plaintiffs filed an initial complaint in this Court asserting five claims for relief.  Defendant United only seeks to dismiss the third and fifth claims, the CCPA claim and unfair competition claim under Colorado law.  Plaintiffs have three

remaining claims regarding trademark infringement and unfair competition in violation of the Lanham Act and trademark infringement asserted under Colorado law.

Plaintiffs provide healthcare services in Colorado and the Rocky Mountain region, operate seven hospitals and over forty outpatient care sites, and serve an average 700,000 patients per year from throughout the United States.  (Compl. ¶ 12.)  Plaintiffs own six HEALTHONE marks that have been federally registered with the United States Patent and Trademark Office ("USPTO").  (Compl. ¶ 28.)  Plaintiffs first used the HEALTHONE mark in commerce on December 5, 1983.  (Compl. ¶ 13.)  The USPTO issued Plaintiffs a United States Registration Number 1,307,339 for "HEALTH ONE" on November 28, 1984.  (Id.)  Plaintiffs used the mark in Colorado for the first time in 1994.  (*Id.*, ¶ 17.)  Plaintiffs license the name "HealthONE" to the HealthONE Federal Credit Union for credit union services and to the Gulf Coast Division, Inc. for air ambulance health care services, free standing emergency care facilities, and coordination and dispatching of transportation and medical services.  (*Id.*, ¶¶ 19-20.)  The USPTO issued Plaintiffs a United States Registration Number 2,334,897 for "HEALTH ONE & Design" on March 28, 2000.  (*Id.*, ¶ 13.)  Plaintiffs have "marketed and offered for sale, *inter alia*, hospital and related healthcare services under the HEALTHONE Marks and HealthONE's Common Law marks."  (*Id.*, ¶ 22.)

United provides health insurance benefits to approximately 35 million individuals in the United States.  (Mot. Dismiss ¶ 1.)  United filed an intent-to-use application with the USPTO to register the name "UNITEDHEALTHONE," Serial Number 77/382,587, on January 28, 2008 (the "'587 application").  (Compl. ¶ 26.)  The '587 application identified

that United provided insurance services and managed health care services.  (*Id.*)

United filed another intent-to-use application with the USPTO to register the name

"UNITEDHEALTHONE & Design," Serial Number 77/544,762, on August 12, 2008 (the

"'762 application").  (*Id.*, ¶ 27.)

Plaintiffs issued cease and desist letters to United on August 14 and September

9, 2008, regarding United's alleged violations of the Lanham Act and common law.

(Compl. ¶ 34.)  Plaintiffs filed two Notices of Opposition with the USPTO on September

9, 2008, and November 7, 2008, because United continued using the name

UNITEDHEALTHONE and pursuing its '587 and '762 Applications.  (*Id.*, ¶¶ 34-35.)

Plaintiffs have filed a motion to stay the Opposition proceedings before the Trademark

Trial and Appeal Board ("TTAB") pending resolution of their claims.  (*Id.*, ¶¶ 37-38.)

The CCPA claim arises from alleged injuries sustained by Plaintiffs when United

incorporated the entirety of Plaintiffs' HEALTHONE marks in United's use of the

UNITEDHEALTHONE mark.  (Compl. ¶ 28.)  Plaintiffs argue that since 2008, United

has engaged in deceptive trade practices by making a false representation as to (1) the

source, sponsorship, approval, or certification of goods, services or property and (2) the

affiliation, connection or association with or certification by another.  Colo. Rev. Stat.

§ 6-1-105(1)(b)-(c).

The unfair competition claim under Colorado law arises from United's alleged

intentional and willful "passing off" of UNITEDHEALTHONE for Plaintiffs' HEALTHONE

marks.  Plaintiffs aver that "United has historically marketed and sold its services and/or

products in the same markets, through the same channels of trade and to the same

relevant consumers as Plaintiffs' customers.  (Compl. ¶ 31.)  Plaintiffs further aver that

"United's continued use of the name UNITEDHEALTHONE on health insurance and

managed health care services and/or products has caused, and unless restrained and

enjoyed, is likely to cause confusion among consumers" familiar with Plaintiffs' marks.

(*Id.*, ¶ 41.)

III.    ANALYSIS

    A.    Standard of Review

The Federal Rules of Civil Procedure provide that a defendant may move to

dismiss a claim for "failure to state a claim upon which relief can be granted."  Fed. R.

Civ. P. 12(b)(6).  "The court's function on a Rule 12(b)(6) motion is not to weigh

potential evidence that the parties might present at trial, but to assess whether the

plaintiff's complaint alone is legally sufficient to state a claim for which relief may be

granted."  *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and

quotation marks omitted).  "A court reviewing the sufficiency of a complaint presumes all

of plaintiff's factual allegations are true and construes them in the light most favorable to

the plaintiff."  *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).  The court also

considers all documents attached to or referred to in the complaint.  *General Steel*

*Domestic Sales, LLC v. Hogan and Hartson, LLP*, 230 P.3d 1275, 1279 (Colo. Ct. App.

2010).

    "To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*

*v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009).  Plausibility, in the context of a

motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 1950.

Furthermore, a court does not "weigh the potential evidence that parties may present at trial . . . but [][] whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief can be granted." *Dubbs*, 336 F.3d at 1201. I am thereby required to determine whether the Complaint is sufficient to plausibly support a CCPA claim and unfair competition claim under Colorado state law.

B.    Plaintiffs' Third Claim for Relief - Violation of the CCPA

United moves to dismiss Plaintiffs' CCPA claim based on two arguments. First, United argues that Plaintiffs have failed to allege that United engaged in an unfair or deceptive trade practice as required by Fed. R. Civ. P. 9(b). Second, United contends that Plaintiffs have not pled the necessary "significant public impact" that would support a CCPA claim.

1.    Elements of a CCPA Claim

The CCPA was "enacted to regulate commercial activities and practices, which because of their nature, may prove injurious, offensive, or dangerous to the public." *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146 (Colo.2003). More specifically, the CCPA works to deter and punish businesses for consumer fraud. *Id.* The CCPA should be liberally construed to serve its broad purpose and scope. *Hall v. Walter*, 969 P.2d 224, 230 (Colo. 1998).

In order to prove a private cause of action under the CCPA, a plaintiff must show: "(1) the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered the injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury." *Rhino Linings*, 62 P.3d at 146-47.  All elements of a CCPA claim must be met; otherwise, the claim fails as a matter of law. *Mayhew v. Cherry Creek Mortgage Co.*, No. 09-cv-00219, 2010 WL 935674, at *14 (D. Colo. March 10, 2010).  If a plaintiff can prove each of the elements, the remedies available include "injunctive relief, civil penalties including treble damages, and attorney fees." *Rhino Linings*, 62 P.3d at 146 (citing Colo. Rev. Stat. §§ 6-1-110, 6-1-113).  United contends that elements (1) and (3) are not satisfied in this case.

2. <u>Whether Plaintiffs Sufficiently Alleged Unfair and Deceptive Practices Under the CCPA</u>

I first address United's argument that the CCPA claim should be dismissed for failure to allege that United has engaged in a deceptive trade practice as required by Rules 12(b)(6) and 9(b).  Under the CCPA, a defendant engages in an unfair or deceptive trade practice when it:

> . . . (b) [k]nowingly makes a false representation as to the source, sponsorship, approval, or certification of goods, services, or property; (c) [k]nowingly makes a false representation as to affiliation, connection, or association with or certification by another; . . . .

Colo. Rev. Stat. § 6-1-105.  The Tenth Circuit has held that "false representation" within

the context of the CCPA must either "induce a party to act, refrain from acting, or have the capacity or tendency to attract consumers." *Rhino Linings*, 62 P.3d at 147.

After reviewing Plaintiffs' Complaint as a whole, I find that it contains allegations sufficient to plausibly support an unfair or deceptive trade practice under the CCPA. The Complaint alleges that United wholly appropriated Plaintiffs' HEALTHONE marks in their entirety, thus constituting a "false representation as to the source, sponsorship, or approval of United's health insurance and managed health care services and/or products as to the affiliation, connection or association" with Plaintiffs' marks.  (Compl. ¶ 59.)  Plaintiffs allege that the insurance services and managed health care services provided by United are closely related to the healthcare services provided under their HEALTHONE mark.  (*Id.*, ¶ 30.)  Additionally, Plaintiffs argue that United markets and sells its services and products in the same markets, through the same channels of trade and to the same relevant consumers as its consumers.  (*Id.*, ¶ 31.)  They also assert that United has commenced actual use of the UNITEDHEALTHONE mark in Plaintiffs' primary market penetration areas.  (*Id.*, ¶ 33.)  These allegations support a plausible claim that United made a "false representation".

In addition, a plaintiff must meet the heightened pleading requirements pursuant to Rule 9(b) to prove a deceptive or unfair trade practice.  *Hansen v. Auto-Owners Ins. Co.*, No. 09-cv-02736, 2010 WL 749820, at *2 (D. Colo. Mar. 4, 2010); *Duran v. Clover Club Foods Co.* 616 F. Supp. 790, 793 (D. Colo. 1985).  Rule 9(b) requires a complaint to "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof."  *Koch v. Koch*

*Industries, Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (citation omitted).  This is intended to "afford the defendants a fair notice of the plaintiff's claims and the factual ground upon which they are based."  *S.E.C. v. Nacchio*, 438 F. Supp. 2d 1266, 1277 (D. Colo. 2006) (quoting *Koch*, 203 F.3d at 1236).

A court must remember that Rule 9(b) is read in conjunction with the principles of Rule 8, "which calls for pleadings to be 'simple, concise, and direct, . . . and to be construed as to do substantial justice."  *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997) (quoting Fed. R. Civ. P. 8(e), (f)).  Additionally, the sufficiency of the complaint must be judged in its entirety rather than in a piecemeal fashion.  *Id.* at 1253 (quoting *Nolan Bros., Inc. v. U.S. for the Use of Fox Bros. Const. Co.*, 266 F.2d 143, 146 (10th Cir. 1959)).

The purpose of heightened pleadings under Rule 9(b) is to put United on notice, so that it may prepare its case.  I find Plaintiffs' Complaint does adequately set forth the time and place of United's alleged unfair or deceptive trade practices so as to give notice to United.  The Complaint alleges the dates United applied with the USPTO for use of the UNITEDHEALTHONE Name.  (Compl., ¶¶ 26-28.)  It then states that Plaintiffs contacted United by letter dated August 14, 2008, and September 9, 2008.  (*Id.*, ¶¶ 34-35.)  Both letters requested United cease and desist from its use of the HEALTHONE mark in violation of federal and common law.  (Id.)  Additionally, the Complaint states that United used the UNITEDHEALTHONE mark through nationwide advertisements, including radio, television, and direct mail flyers to residents of Colorado (*id.*, ¶ 40), and these documents were attached to the Complaint.  I find from

the foregoing that Plaintiffs adequately put United on notice as to the particulars of United's alleged unfair or deceptive trade practices.

Moreover, a court must not allow particularity requirements to pervert and allow a "sophisticated defrauder[] [to] successfully [] conceal the details of their fraud." *State Farm Mutual Auto. Ins. Co. v. Parrish*, 899 P.2d 285, 288-89 (Colo. Ct. App. 1994).  In this case, although Plaintiffs do not mention the actual days and individual cities that United used the UNITEDHEALTHONE mark, the omission of such dates and places does not mean the Complaint lacks the necessary specificity required by Rule 9(b) given the actual facts alleged and documents attached to the Complaint.

For the foregoing reasons, I find that Plaintiffs have sufficiently alleged with the necessary particularity United's unfair or deceptive trade practices to satisfy the first element of a CCPA claim.  The motion to dismiss is thus denied as to that argument.

3.    Whether Plaintiffs' Allegations Establish a Significant Public Impact
       on Actual or Potential Consumers of United's Goods

Second, United asserts that Plaintiffs have not adequately pled the necessary "significant public impact" to support a CCPA claim.  The Colorado Supreme Court has held that the CCPA "cannot be used to remedy a purely private wrong." *Crowe v. Tull*, 126 P.3d 196, 208 (Colo. 2006).  Therefore, the CCPA requires a plaintiff to show that the defendant's unfair or deceptive practice significantly impacts the public as actual or potential consumers of the defendant's goods, services or property. *See Rhino Linings*, 62 P.3d at 149.  A "plaintiffs' complaint must meet the low burden of setting forth facts that, if proved, could establish a public impact upon any theory of the law." *General*

*Steel Domestic Sales*, 230 P.3d at 1279.  To establish whether a challenged practice significantly impacts the public, a court should consider the following elements:

> (1) the number of consumers directly affected by the challenged practice; (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice; and (3) evidence that the challenged practice has previously affected other consumers or has the significant potential to do so in the future.

*Coors v. Sec. Life of Denver*, 91 P.3d 393, 399 (Colo. Ct. App. 2003).

I find that Plaintiffs' Complaint as a whole sets forth facts that could establish a public impact to satisfy the aforementioned considerations.  First, while the Complaint does not state the precise number of consumers affected, the allegations are based on a service that was advertised nationwide, including in the state of Colorado.  The Colorado Supreme Court has held that "there is no dispute that [the] deceptive practices implicated the public as consumers" where "the misrepresentations were directed to the market generally, taking the form of widespread advertisement."  *Hall*, 969 P.2d at 235. Furthermore, advertising that "potentially affects a large swath of the public via television, print media, radio, and the internet" can support a CCPA claim.  *Crowe*, 126 P.3d at 209.  Here, the Complaint asserts that United used the UNITEDHEALTHONE mark in radio, television, and internet advertisements, as well as direct mail flyers. (Compl. ¶ 40.)  Plaintiffs have sufficiently shown that United's misrepresentations were directed to the market generally, and were not merely a private wrong.

United also argues that Plaintiffs do not allege that United's use of their mark significantly impacts the public as actual users of consumers of United's good or services.  Again, I disagree.  The Complaint alleges that the health insurance services

-10-

provided by United are closely related to the healthcare services provided by Plaintiffs.

(Compl. ¶ 30.)  It also alleges that United has marketed and sold its health insurance

services through the same markets and channels of trade *to the same relevant*

*consumers as Plaintiffs.*  (*Id.*, ¶ 31) (emphasis added.)  Finally, Plaintiffs allege that

United's use of their mark has caused and will likely continue to cause confusion among

unsuspecting consumers familiar with their marks which are used to identify Plaintiffs'

hospital and related health insurance services.  (*Id.*, ¶ 41.)  By implication, United's

consumers are included in that group because Plaintiffs alleged that the parties'

consumers overlap.

Accordingly, I find that the Complaint supports a plausible public impact to satisfy

the third element of a CCPA claim.  The motion to dismiss is thus denied as to the

CCPA claim.

C.    Plaintiffs' Fifth Claim for Relief - Unfair Competition under Colorado Law

United moves to dismiss Plaintiffs' unfair competition claim under Colorado law

because they allegedly fail to state a claim under Rule 12(b)(6) for "passing off" or

"palming off" Plaintiffs' marks.  United argues that Plaintiffs do not satisfy the two

elements for that type of unfair competition claim.  Plaintiffs respond that the Colorado

Supreme Court established a more specific test for trademark or trade name unfair

competition claims that should be applied involving secondary meaning and that

Plaintiffs' allegations meet that test.  Plaintiffs also argue that they have pled sufficient

facts even under United's test for unfair competition.  For the reasons below, I find that

the motion to dismiss should be denied as to the unfair competition claim.

-11-

1.    Elements of Common Law Unfair Competition

The United States Supreme Court has held that States "may protect businesses in the use of their trademarks, labels, or distinctive dress in the packaging of goods so as to prevent others, by imitating such markings, from misleading purchasers as to the source of the goods." *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 232 (1964). "The law of unfair competition has its roots in the common-law tort of deceit: its general concern is with protecting *consumers* from confusion as to source." *Bonito Boats v. Thunder Craft Boats*, 489 U.S. 141, 157 (1989) (emphasis in original).

The common law tort of unfair competition thus protects against "copying of nonfunctional aspects of consumer products which have acquired secondary meaning such that they operate as a designation of source." *Bonito Boats*, 489 U.S. at 158. Thus, the tort is commonly asserted to protect trademarks and trade names. *See Radio Station KTLN, Inc. v. Steffen*, 346 P.2d 307, 308 (Colo. 1959).  The Colorado Supreme Court has held that with respect to trademarks or trade names, the purpose is to "protect the owner of a trademark or name and the public at large from unfair competition, confusion in the public's mind and false or misleading claims." *Id.* Furthermore, "Courts have been diligent in protecting these property interests, and have gone far to widen the scope of equitable relief." *Id.*

United relies on an opinion from this Court that requires a plaintiff to plead two elements when claiming a generic unfair competition claim. *Netquote, Inc. v. Mostchoice.com*, 504 F. Supp. 2d 1126, 1131 (D. Colo. 2007).  The first element requires that "the defendant copied the plaintiff's products or services or

-12-

misappropriated the plaintiff's name or operations." *Id.* The second element requires

that the defendant's conduct "is likely to deceive or confuse the public because of the

difficulties in distinguishing between the plaintiff's and defendant's products and

services." *Id.* I do not apply this more generic unfair competition claim because the

Colorado Supreme Court has provided a more specific trade name unfair competition

test that I find applicable here. *See Gregg Homes, Inc. v. Gregg & Co. Builders, Inc.*,

978 P.2d 146, 147 (Colo. Ct. App. 1998)*; Swart v. Mid-Continent Refrigerator Co.*, 360

P.2d 440, 442 (Colo. 1961). I apply the trade name unfair competition test because

Plaintiffs' mark HEALTHONE appears in its entirety in the UNITEDHEALTHONE mark.[1]

2.    Whether Plaintiffs' Allegations Pled Sufficient Facts under the
Applicable Elements of Unfair Competition

United seeks to dismiss Plaintiffs' unfair competition claim for failure to state a

claim for relief. The Colorado Supreme Court has held that there are two elements of

an unfair competition claim when a defendant uses an identical or a similar trademark or

trade name as the plaintiff. First, a plaintiff must show that the trade name "acquired a

secondary meaning or significance that identifies the plaintiff." *Swart*, 360 P.2d at 442.

"'Secondary meaning' is defined as 'the consuming public's understanding that the

mark, when used in context, refers not to what the descriptive word ordinarily describes,

but to the particular business that the mark is meant to identify.'" *U.S. Search, LLC v.*

*U.S. Seach.com*, 300 F.3d 517, 525 (4th Cir. 2002). Second, "the defendant must have

---

[1] I note, however, that it appears Plaintiffs can satisfy even the test relied on by United as Plaintiffs' allegations plausibly show that United has misappropriated their mark in its entirety and that United's conduct "is likely to deceive or confuse the public because of the difficulties in distinguishing between the plaintiff's and defendant's products and services", as explained in more detail below.

-13-

unfairly used the name or a simulation of it against the plaintiff." *Swart*, 360 P.2d at 442

(citation and quotation omitted).  Ultimately, "[t]he universal test is whether the public is

likely to be deceived. *Id.*

I find Plaintiffs' complaint satisfies both elements of an unfair competition claim

for trademarks or trade names.  First, Plaintiffs showed that the HEALTHONE mark

acquired a secondary meaning that identifies them because of use of the marks for over

26 years.  (Compl. ¶ 23.)  Plaintiffs have achieved widespread public recognition of the

marks because of extensive promotion, and thus, the HEALTHONE marks have

become a single source identifier distinctly associated with Plaintiffs.  (*Id.*, ¶¶ 24-25.)

Second, Plaintiffs allege that United has unfairly used a simulation of the

HEALTHONE marks against them and that consumers familiar with the HEALTHONE

marks are or will likely be confused by United's use of the UNITEDHEALTHONE mark.

(Compl. ¶ 41.)  Plaintiffs argue that United's insurance and managed healthcare

services are closely related to Plaintiffs' healthcare services.  Therefore, consumers

familiar with Plaintiffs' HEALTHONE mark will be deceived or confused as to the source

of the business in question when they encounter Defendant's UNITEDHEALTHONE

mark in the same markets and channels of trade.  (Compl. ¶¶ 30-31.)

I find that Plaintiffs' complaint sufficiently alleges that United's use of the

UNITEDHEALTHONE is likely to create confusion in the public's mind.  Plaintiffs have

alleged that United's use of the UNITEDHEALTHONE marks "have caused and likely

are continuing to cause consumers to believe, mistakenly and erroneously, that United's

health insurance and managed health care services are affiliated with, related to,

sponsored by, derived and/or sourced from HealthOne." (Compl. ¶ 45.)  In the *Swart* case before the Colorado Supreme Court, plaintiff used the trade name "Mid-Continent Refrigerator Co." while defendants, former employees, similarly used the prefix "Mid-" for their trade name, "Mid-Commercial Refrigeration Co."  *Swart*, 360 P.2d at 442. There, the court held that the public was being mislead and deceived because the defendants' trade name was "so nearly identical with and similar to the name of the plaintiff, and is so suggestive of the business of the plaintiff."  *Id*.  Similarly, United's UNITEDHEALTHONE mark can be construed to be substantially similar to Plaintiffs' HEALTHONE marks and suggests that both businesses are in the health industry.

Based on the foregoing, I find that Plaintiffs' specific factual allegations are sufficiently plausible to support a claim of unfair competition.  Accordingly, I deny Defendant's Motion to Dismiss as to this claim as well.

IV.   CONCLUSION

In conclusion, it is

ORDERED that Defendant's Motion to Dismiss the Colorado Consumer Protection Claims and Common Law Unfair Competition Claim Pursuant to Rules 9(b) and 12(b)(6) filed August 24, 2010 (ECF No. 22) is **DENIED**.

Dated:  March 28, 2011

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge