IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.   10-cv-01633-WYD-BNB

HEALTHONE OF DENVER, IND., a Colorado corporation;
HCA-HEALTHONE LLC, a Colorado limited liability company,

      Plaintiffs,

v.

UNITEDHEALTH GROUP INCORPORATED, a Minnesota corporation,

      Defendant.

---

## ORDER

---

I.   <u>INTRODUCTION</u>

      THIS MATTER is before the Court on Defendant UnitedHealth Group

Incorporated's ["UnitedHealth"] Motion to Exclude Testimony of Plaintiffs' Expert Kenneth

B. Germain and for Filing Under Seal filed June 17, 2011 (ECF No. 56).   A response was

filed to the motion on July 11, 2011, a reply was filed on July 28, 2011, and a surreply was

filed on October 24, 2011.   The portion of the motion that seeks to restrict public access

to the expert report of Mr. Germain is granted.1

---

1  While the motion asks that the report be sealed, the Local Rules of this Court were revised effective
December 1, 2011, as to the procedure for restriction of access to documents.   Instead of requesting to
seal a document, a party must request that the documents be restricted to public access based on
restriction levels set forth in the Rules.   D.C.COLO.LCivR 7.2.B.   Since HP is asking that access to the
documents be limited to the parties and the Court, I will assume that HP is seeking a Level One restriction of
Mr. Germain's expert report.

As to the portion of the motion that seeks to exclude Plaintiffs' expert Kenneth Germain, UnitedHealth argues that his testimony should be excluded under Fed. R. Evid. 702 as unhelpful, unreliable and prejudicial because Mr. Germain allegedly "seeks improperly to draw an inference from UnitedHealth's assertion of the attorney-client privilege, to parrot another expert's testimony, and invade the province of the Court." (Mot. to Exclude Testimony 1).   Thus, UnitedHealth asserts that his opinions are not relevant or reliable, and should be excluded as they have been in multiple other cases.

The specific opinions that Mr. Germain seeks to offer according to his March 31, 2011 report (Ex. 1 to Def.'s Motion) are that: (1) UnitedHealth should not have used the "UnitedHealthOne" mark because "competent legal advice would have informed it" that use of the mark would violate Plaintiffs' rights (Germain Report at ¶ 8(a)); (2) the survey of Basil G. Englis, another of Plaintiffs' experts, is reliable, legitimate, and admissible and "deserves much credence" (*Id.* at ¶ 8(b)); and (3) the "modern, federalized, widespread doctrine of 'reverse confusion' applies to this case" (*Id.* at ¶ 8(d)).   UnitedHealth argues that: (1) Mr. Germain's opinion that UnitedHealth should not have used the "UnitedHealthOne" mark relies improperly on the fact that UnitedHealth asserted the attorney-client privilege; (2) Mr. Germain's opinion regarding the Englis survey is outside the scope of Mr. Germain's expertise and introduces improper legal conclusions; and (3) Mr. Germain's proposed testimony regarding "reverse confusion" attempts to usurp the function of the Court, whose role it is to instruct the jury on the rules of law that apply to the

case.   I find for the reasons discussed below that UnitedHealth's motion should be granted in part and denied in part at this juncture of the case.

II.   <u>ANALYSIS</u>

    A.   <u>Legal Standard</u>

    The court must make two inquiries in connection with whether an expert opinion is admissible.   *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001).   "First, the court ha[s] to determine whether. . .the expert . . .[i]s qualified by 'knowledge, skill, experience, training, or education' to render an opinion.   *Id. (*quoting Fed. R .Evid. 702).   A key issue is whether the expert testimony will aid the jury in its determination of the critical issue in the case.   *Specht v. Jensen*, 853 F.2d 805, 807 (10th Cir. 1988); *see also Wilson v. Muckala*, 303 F.3d 1207, 1219 (10th Cir. 2002) ("The 'touchstone' of admissibility of expert testimony is its helpfulness to the trier of fact.").   "Expert testimony is appropriate when it relates to issues that are beyond the ken of people of ordinary intelligence.'"   *Curtis v. Okla. City Pub. Schs. Bd. of Educ,,* 147 F.3d 1200, 1218 (10th Cir. 1998) (quotation omitted).   "The Tenth Circuit takes a liberal approach to the question of whether proffered expert testimony will assist the jury. Doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility unless there are strong factors such as time or surprise favoring exclusions."   *Cook v. Rockwell Int'l Corp.,* 580 F. Supp. 2d 1071, 1083 (D. Colo. 2006).

    Second, if the expert is so qualified, the court has to determine whether the opinions are "reliable" under the court's gatekeeping role as set forth in *Daubert v. Merrell*

*Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).   When "[f]aced with a proffer of expert scientific testimony. . .the trial judge must determine. . ., pursuant to Rule 104(a), whether the expert is testifying to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue."   *Id.* at 592.   "This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue."   *Id.* at 592-93.   Factors to consider in making this determination include:   (a) whether the theory or technique of the expert can be and has been tested, (b) "whether the theory or technique has been subjected to peer review and publication"; (c) the known or potential rate of error of the theory or technique; and (d) whether the theory or technique is "generally accepted".   *Id.* at 593-94.   The inquiry is a flexible one and "must be solely on the principles and methodology, not on the conclusions the expert generates."   *Id.* at 594-595.   If the evidence is "shaky but admissible" under the above standard, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking" the evidence.   *Id.* at 596.

The Supreme Court expanded this analysis in *Kumho Tire Co., Ltd. v Carmichael*, 526 U.S. 137 (1999), holding that *Daubert*'s gatekeeping function also applies to the testimony of experts who are not scientists, but who have "technical" and "other specialized" knowledge.   *Id.*   "[W]here such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question, . . . the trial judge must

4

determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant discipline].'"   *Id.* at 149 (quoting *Daubert*, 509 U.S. at 592).   The factors identified in *Daubert* may or may not be pertinent in assessing the reliability of these opinions, depending on the nature of the issue, the expert's particular expertise, and the subject of his or her testimony.   *Id.* at 150.

     B.    <u>Whether Mr. Germain's Opinions Should Be Excluded</u>

According to Mr. Germain's expert report, he is an attorney and has taught "Trademarks", Intellectual Property" and other related classes.   (Ex. 1 to Def.'s Mot., ¶1(a).)   He states that he has often served in an expert witness capacity in civil cases involving a wide variety of issues related to the selection, adoption, use, registration, maintenance and infringement of trade designations of all kinds" and has "been called upon as a potential expert witness on trademark and unfair competition matters on dozens of occasions. . . ."   *Id.*, ¶ 1(b).)

While UnitedHealth has raised the applicability of *Daubert*, Mr. Germain does not appear to be relying on scientific testimony but on his experience and training in the area of trademarks and unfair competition.   Thus, many of the *Daubert* factors are not relevant.   Further, his opinion is not improper simply because it is not scientific.   Rule 702 authorizes opinion testimony by experts with "specialized knowledge" which can be acquired through experience and training.   *United States v. Garza*, 566 F.3d 1194, 1199 (10th Cir. 2009).

Also and importantly, UnitedHealth does not seek to disqualify Mr. Germain based on any lack of skill, specialized knowledge, experience, or qualifications, other than with respect to his lack of expertise in connection with surveys.   Indeed, Plaintiffs note that Mr. Germain's trademark opinions have been accepted in similar cases as reliable, qualified and helpful testimony, including a case within this Court which was ultimately affirmed by the Tenth Circuit.   *See Vail Associates, Inc. v. Vend-Tel-Co., Ltd.,* Case No. 1:01-cv-01172 (D. Colo. Jan. 4, 2005), *aff'd*, 516 F.3d 853, 861-863 (10th Cir. 2008). While UnitedHealth asserts that Mr. Germain's opinions have been excluded in a number of cases, which cases are attached to its motion, those cases were all decided on the basis of the particular opinions to be delivered in that case.   Here also, I will address the specific opinions of Mr. Germain that UnitedHealth objects to and the admissibility of same.

Before doing so, however, I address generally the legal parameters for expert opinions.   This should guide the parties in connection with their presentation of expert testimony, including that of Mr. Germain.   "Rule 704(a) of the Federal Rules of Evidence 'allows an expert witness to testify in the form of an opinion or inference even if that opinion or inference embraces an ultimate issue to be determined by the trier of fact.'" *United States v. Bedford*, 536 F.3d 1148, 1158 (10th Cir. 2008) (citing *A.E. ex rel Evans v. Indep. Sch. Dist. No. 25*, 936 F.2d 472, 476 (10th Cir.1991)).   "However, an expert may not simply tell the jury what result it should reach without proving any explanation of the criteria on which that opinion is based or any means by which the jury can exercise

independent judgment." *United States v. Dazey*, 403 F.3d 1147, 1171 (10th Cir. 2005). "Expert testimony of this sort is sometimes excluded on the ground that it 'usurps the function of the jury in deciding the facts, or interferes with the function of the judge in instructing the jury on the law.'" *Id.*

Further, "[e]xpert witnesses may not testify as to ultimate issues of law governing the jury's deliberations, because instructing the jury is the function of the trial judge." *United States Aviation Underwriters, Inc. v. Pilatus Bus. Aircraft, Ltd.*, 582 F.3d 1131, 1150 (10th Cir. 2009).   Expert testimony is also not proper "when the purpose of testimony is to direct the jury's understanding of the legal standards upon which their verdict must be based."   *Specht*, 853 F.2d at 810.   Thus, "[w]hile testimony on ultimate facts is authorized under Rule 704, . . .testimony on ultimate questions of law is not favored."   *Id.* at 808.   "The basis for this distinction is that testimony on the ultimate factual questions aids the jury in reaching a verdict; testimony which articulates and applies the relevant law, however, circumvents the jury's decision-making function by telling it how to decide the case."   *United States Aviation Underwriters*, 582 F.3d at 1150 (citing *Specht*, 853 F.2d at 808).

While "[a]n 'expert may not state legal conclusions drawn by applying the law to the facts, [a]n expert may. . .refer to the law in expressing his or her opinion.'"   *Bedford*, 536 F.3d at 1158 (quotation omitted).   Indeed, an expert witness "may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms."   *Specht*, 835 F.2d at 809.   Such testimony is proper so

long as "the expert does not attempt to define the legal parameters within which the jury

must exercise its fact-finding function." *Id.* Thus, in *Specht*, the court noted that "the

question, 'Did T have capacity to make a will?' would be excluded, while the question,

'Did T have sufficient mental capacity to know the nature and extent of his property and

the natural object of his bounty to formulate a rational scheme of distribution?' would be

allowed." *Id.* 807-08.

These concepts were further explored in *Smith v. Ingersoll-Rand Co.*, 214 F.3d

1235 (10th Cir. 2000). In that case, the defendant claimed that a forensic expert's

"explanation of hedonic damages constituted impermissible testimony on an ultimate

question of law", violating the court's "admonition that 'in no instance can a witness be

permitted to define the law of the case.'" *Id.* at 1246 (quoting *Specht*, 853 F.2d at 810).

The Tenth Circuit stated that "[t]his rule is not. . .a per se bar on any expert testimony

which happens to touch on the law; an expert may be 'called upon to aid the jury in

understanding the facts in evidence even though reference to those facts is couched in

legal terms.'" *Id* (quoting *id.* at 809).

I now turn to the opinions that are objected to by UnitedHealth.

1. <u>Opinions as to UnitedHealth's Assertion of the Attorney-Client Privilege</u>

UnitedHealth first asserts that Mr. Germain's opinion relies improperly on the fact

that UnitedHealth asserted the attorney-client privilege or invades that privilege by

producing an alleged "adverse inference". UnitedHealth points to the fact that

Mr. Germain begins his report by inferring that (1) UnitedHealth's attorney probably gave

8

UnitedHealth "bad news" and warned against using the "UnitedHealthOne" mark (Germain Report at ¶¶ 10(b), 12); (2) UnitedHealth's attorney chose not to put that "bad news" in writing (*id.* at ¶ 10); (3) UnitedHealth then ignored its attorney's advice in favor of "a 'Full speed ahead: damn the torpedoes!' attitude" (*id.* at ¶ 12); and (4) UnitedHealth's attorney or someone else "made a record of the factual and legal reason(s) seen as justifying" UnitedHealth's decision to ignore its attorney's advice.   *Id.* UnitedHealth asserts that Mr. Germain predicates these inferences on the fact that UnitedHealth has claimed privilege for confidential communications with its counsel and has not asserted an advice-of-counsel defense.

In response, Plaintiffs attach a redline draft of the report that was proposed to UnitedHealth to address its objections to Mr. Germain's opinions.   In that redline draft, Plaintiffs deleted almost all of what UnitedHealth found objectionable.   Plaintiffs argue that UnitedHealth did not meaningfully confer with Plaintiffs as required by D.C.COLO.LCivR 7.1, both before filing the motion and after the motion was filed when Plaintiffs tendered the redlined draft of the expert report to UnitedHealth in an attempt to ameliorate its concerns about Mr. Germain's testimony.   While it does appear that UnitedHealth did not confer with Plaintiffs to the maximum extent possible, I decline to deny its motion on that basis since there was at least some effort to meet and confer.

Instead, I address the redline draft of the expert report that I will assume contains what Mr. Germain will not testify to at trial based on Plaintiffs' representation in its response brief.   From my review of that report, it does not appear that Mr. Germain will

testify about or invoke any adverse inference about the fact that UnitedHealth has chosen

not to assert reliance on counsel advice as a defense.   Indeed, almost every opinion

objected to by UnitedHealth about Mr. Germain improperly using the attorney-client

privilege against UnitedHealth has been withdrawn from Mr. Germain's report.   To the

extent that Mr. Germain may, however, still seek to testify as to issues arising from the

attorney-client privilege or advice of counsel, I find this testimony is improper and grant

UnitedHealth's motion to exclude testimony on this issue for the reasons stated in

UnitedHealth's motion.

Plaintiffs assert now that Mr. Germain will testify as an expert about the contents of

the Search Report and the meaning thereof, and that his testimony will be helpful to the

trier of fact.   Plaintiffs further state that Mr. Germain's analysis of the Search Report

requires specialized knowledge, consumes numerous hours of research and review and

in no way makes any conclusions as to the ultimate issue in this case, contrary to

UnitedHealth's argument.   I agree with Plaintiffs that it appears Mr. Germain's expert

trademark testimony about the Search Report (as outlined in the redline draft of his

report) may be of assistance to the trier of fact.

Plaintiffs state that the Search Report consists of hundreds of pages of references

to both registered and common-law marks, canceled registrations, failed applications,

domain names, and business names.   They contend that his testimony about the

meaning of the Search Report would be helpful to the jury to understand the marks

already in the marketplace or intended to be in the marketplace at the time UnitedHealth

adopted its Marks and, therefore, what knowledge UnitedHealth had or should have had given the contents of the Search Report when it made its decision to adopt the Marks at issue.   UnitedHealth has not stated any valid reason why this testimony should be excluded, and I that this testimony appears to be proper.   *See Children's Med. Center v. Columbia Hosp.*, No. 3-04-2436-BD, 2006 WL 616000, at *5 (N.D. Tex. March 10, 2006) (denying challenge to trademark law professor's opinion on the strength of a mark based on the results of a trademark search report obtained by the plaintiffs because "[a]n expert may base an opinion on facts or data of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject" and the expert stated that search reports are "generally relied upon by trademark practitioners when advising clients as to the availability of marks for use and registration"); *see also Larsen v. Ortega*, 816 F. Supp. 97 (D. Conn. 1992) (court found that expert testimony was proper as to his factual investigation regarding other companies that used the disputed mark, stating that "[t]here is little doubt that expert testimony on the strength of a plaintiff's trademark or on the degree of similarity within a discreet industry is proper")).[2]   Thus, UnitedHealth's motion to exclude is denied as to these issues.

However, I find that Mr. Germain may not opine about the results of his research as they apply to the ultimate issue of trademark infringement.   *See Children's Med. Center*, 2006 WL 616000 at *6 n. 4; *Bay State Bank v. Baystate Fin. Servs.*, No. 03-40273-FDS,

---

[2]   I reject UnitedHealth's assertion in its reply that Mr. Germain's opinions from his review of the search report are mere *ipse dixit.*

2007 WL 6064455, at *2 (D. Mass. March 23, 2007).   To the extent he was planning to testify as to this ultimate issue, UnitedHealth's motion to exclude is granted.

      2.  <u>Opinions About the Englis Survey</u>

UnitedHealth argues that Mr. Germain's report analyzes a consumer survey conducted by another expert, Basil Englis.   It asserts that Mr. Germain does not claim to be an expert on consumer surveys and does not describe any consumer survey that he has conducted, instead referring only to his general "experience reviewing surveys." (Germain Report at ¶¶ 1(a), 13(b)).   Nonetheless, Mr. Germain opines about the "substantial reliability" and "legal legitimacy" of the Englis survey as well as that the results of the survey are "admissible."   (*Id.* at ¶ 8(b)).

UnitedHealth argues that although Mr. Germain concludes that the survey is "fair" and "in accord with the prevailing legal standards," (Germain Report at ¶ 13), he provides no analysis of the survey's methodology to explain those conclusions.   Further, Mr. Germain has no expertise in consumer surveys.   Accordingly, UnitedHealth argues that Mr. Germain's opinions regarding the Englis survey, including its "substantial reliability" and "legal legitimacy", are outside the scope of his expertise and introduce improper legal conclusions.   UnitedHealth further argues that Mr. Germain's testimony regarding the survey is unhelpful to the factfinder because it is cumulative and adds nothing to Mr. Englis' opinion, and is merely an attempt to parrot and bolster the opinions of Mr. Englis.

I agree with UnitedHealth that testimony by Mr. Germain that attempts to bolster the legitimacy of the survey or merely parrot the results of a survey conducted by another person would be improper.   *See Dura Auto. Sys. Of Indiana, Inc. v. CTS Corp.*, 285 F.3d 609, 613 (7th Cir. 2002) ("it is common in technical fields for an expert to base an opinion in part on what a different expert believes on the basis of expert knowledge not possessed by the first expert; and it is apparent from the wording of Rule 703 that there is no *general* requirement that the other expert testify as well" but an expert may not merely parrot what the other expert said, vouch for that expert, or become that expert's "spokesman".)   Plaintiffs assert, however, that they will not present such testimony.

Instead, Plaintiffs argue that citations to the survey are solely for the purpose of providing a proper foundation for Mr. Germain's opinion as required by Fed. R. Civ. P. 26(a)(2)(B).   Plaintiffs further assert that Mr. Germain simply seeks to establish that the survey is a legally sufficient foundation on which he may base his opinions regarding reverse confusion, addressed below.   I find that testimony from Mr. Germain about the survey may be proper if Mr. Germain can establish a proper foundation for the survey under the Federal Rules of Evidence and can show that the survey is the type of data reasonably relied upon by experts in his field in forming opinions or inferences upon the subject pursuant to Fed. R. Evid. 703.   This may well depend on whether or not Mr. Germain has any familiarity with the methods or reasoning used by Mr. Englis in his survey and what his experience is with surveys.   *See TK-7 Corp. v. Estate of Barbouti,* 993 F.2d 722, 732 (10th Cir.1993).   I am unable to determine this from Mr. Germain's

report or the briefing and find that this is an issue better left for trial.   Thus, I deny the motion to exclude all testimony regarding the survey, deferring resolution of this issue until trial.

### 3. Opinions About Reverse Confusion

Finally, UnitedHealth asserts that Mr. Germain's report presents opinions as to the law that he contends should apply in this case.   In particular, UnitedHealth points to Mr. Germain's opinion that reverse confusion is the law in Colorado and his explanation and advocacy for this law.   (Germain Report at ¶ 8(d)).   Mr. Germain asserts in his opinion that "...forward and reverse confusion are *not* mutually exclusive; indeed they both can occur at the same time" and that "[a] plaintiff alleging trademark infringement can prove actionable 'likelihood of confusion' by forward *and/or* reverse confusion evidence.   (*Id.* at ¶¶ 18(a) and 17(d)).   Mr. Germain then concludes that there was a likelihood of confusion because UnitedHealth's advertising efforts were "very likely to produce reverse confusion between 'UnitedHealthOne' and 'HealthOne.'"   (*Id.* at ¶ 19(a)).   UnitedHealth argues that Mr. Germain does not provide or cite to any evidence of confusion, and that his testimony regarding "reverse confusion" attempts to usurp the function of the Court, whose role it is to instruct the jury on the rules of law.

Plaintiffs argue in response that Mr. Germain's testimony on reverse confusion will not state the law applicable to this case or opine on the ultimate issues.   The ultimate issue here is whether there is a likelihood of confusion between the HealthONE marks and the UnitedHealthOne marks.   Mr. Germain is opining on *one factor* in the likelihood

of confusion analysis, specifically, the actual confusion factor and how the doctrine of

reverse confusion can explain the results of the Mind/Share Survey.   Plaintiffs further

assert that even if Mr. Germain's opinions embraced an ultimate issue, Rule 704 permits

such testimony.   Mr. Germain does not attempt to define the legal parameters within

which the jury must exercise its fact-finding function.   Instead, according to Plaintiffs, his

opinion focuses on the role reverse confusion plays in the level of actual confusion shown

in the control group of the Mind/Share survey.   Any stating of the law concerning reverse

confusion is merely foundational information for his opinions.   Plaintiffs further point out

that as Plaintiffs' trademark claim is not based on the doctrine of reverse confusion, there

is no danger of Mr. Germain opining or instructing about any rule of law in the jury

instructions.   Finally, Plaintiffs assert that even if he did opine about any rule of law, the

Court could eliminate any concern about that testimony by simply instructing the jury to

disregard any of Mr. Germain's testimony inconsistent with its instructions.

I find that this issue should be deferred until trial where I can hear this evidence in

context.   I note, however, that so long as Mr. Germain does not attempt to tell the jury

what the law is or define the law in the instructions, Mr. Germain's testimony on this issue

may be proper.   Courts routinely admit expert testimony from intellectual property

attorneys in trademark cases.   *See Olympia Group, Inc. v. Coopers Industries, Inc.,* No.

5:01-CV-423, 2003 WL 25767444, at *1 (E.D.N.C. April 17, 2003); *Sam's Wine & Liquors,*

*Inc. v. Wal-Mart Stores, Inc.*, No. 92 C 5170, 1994 WL 529331, at *8 (N.D. Ill. Sep. 27,

1994).   Guidance from a trademark expert regarding the individual likelihood of

confusion factors or any survey results upon which to analyze those factors may be

appropriate and critically helpful to the trier of fact, providing a proper foundation is laid

and the expert has the experience necessary to opine as to these issues.

As set forth in a leading treatise:

> Expert testimony on the factual factors that go into the ultimate finding on
> the confusion issue is generally quite proper and helpful to both judge and
> jury. . . .The expert testimony of expert witnesses is generally allowed on
> [the likelihood of confusion factors] and other factors which are used to
> analyze whether the designation is a valid trademark or if there is a
> likelihood of confusion.

4 J. Thomas McCarthy, McCARTHY ON TRADEMARKS AND UNFAIR COMPETITION

§ 23:2.75 ("MCCARTHY").   Furthermore, McCARTHY advises that trademark attorneys

can be helpful in the jury's understanding of unfamiliar and "perhaps counter  intuitive"

trademark concepts.   *Id.*

Indeed, McCARTHY cites a case within this Circuit where Mr. Germain's testimony

was allowed to assist the jury on several of the factors relevant to likelihood of confusion

in a trademark case as set forth in *Sally Beauty Co., Inc. v. Beautyco, Inc.,* 304 F.3d 964,

972 (10th Cir. 2002).   The case in which Mr. Germain testified, captioned *Vail*

*Associates, Inc. v. Vend-Tel-Co., Ltd.,* Case No. 1:01-cv-01172 (D. Colo. Jan. 4, 2005),

was ultimately affirmed by the Tenth Circuit, 516 F.3d 853, 861-863 (10th Cir. 2008).

*Vail Associates* centered on the alleged trademark infringement of the plaintiff's

mark VAIL by the defendant's mark 1-800-SKI-VAIL.   The defendant called on

Mr. Germain to testify as to four of the six *Sally Beauty* factors:   strength of the mark;

16

similarity of the marks; intent of the defendant; and the degree of care.   *Vail Assocs.*, 516 F.3d at 861-63.   Not only did the district court seemingly rely on Mr. Germain's opinion in its order finding for the defendant on all claims, but the Tenth Circuit extensively relied on and quoted approvingly whole portions of Mr. Germain's testimony and opinions in affirming the district court's opinion.   *See id.* ("Germain's testimony that [the defendant] did not appear to intend to infringe upon [the [plaintiff]'s mark or utilize [the plaintiff]s' reputation was equally critical;" "In this case, Germain's testimony as to the similarities between the two marks at issue is entirely consistent with our analysis of the marks in *Sally Beauty*").   While the Tenth Circuit did not address any challenges to Mr. Germain's testimony, as noted by UnitedHealth, it also did not find such evidence to be improper.

Other courts have also allowed an expert to testify as to factors relevant to likelihood of confusion so long as the expert does not state the ultimate legal conclusion about likelihood of confusion or the verdict the jury should reach with respect to trademark infringement.   *See Scurmont LLC v. Firehouse Rest. Group, Inc.*, No. 4:09-cv-00618, 2011 WL 2670575, at *8 (D.S.C. July 8, 2011); *Roederer v. J. Garcia Carrion, S.A.*, 2010 WL 489529, at *3 (D. Minn. Feb. 4, 2010); *Sam's Wine & Liquors,* 1994 WL 529331, at *8-9; *YKK Corp. v. Jungwoo Zipper Co.*, 213 F. Supp. 2d 1195, 1203 (C.D. Cal. 2002). Further, in *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365, 1371 (10th Cir. 1977), the Tenth Circuit noted that the district court was within its discretion in accepting expert testimony from a trademark attorney where the jury was instructed to ignore any testimony contrary to court's instructions.

17

I also note that the Tenth Circuit has allowed experts to explain the law in certain circumstances.   For example, in *Smith v. v. Ingersoll-Rand Company*, the Tenth Circuit found that the district court did not err in allowing an expert to explain his interpretation of the meaning of hedonic damages where the district court determined that such testimony was relevant.   214 F.3d at 1245-46.   The expert "did not attempt to apply the facts of the case 'to the criteria he proffered to the jury; the jury remained free to exercise its fact-finding function.'"   *Id.*   The court found that the expert's "testimony on hedonic damages no more defined the law of the case than did his testimony regarding the computation of other types of damages" where "he described in great detail the factors the jury could consider in calculating. . . lost future earnings".   *Id.*

In another case, the Tenth Circuit found that "'[e]xpert testimony by an IRS agent which expresses an opinion as to the proper tax consequences of a transaction is admissible evidence,' . . . so long as the expert does not 'directly embrace the ultimate question of whether [the defendants] did in fact intend to evade income taxes,' . . . ." *Bedford*, 536 F.3d at 1158 (quotations omitted).   *See also United States v. Dazey*, 403 F.3d 1147, 1172 (10th Cir. 2005*); Okland Oil Co. v. Conoco, Inc.*, 144 F.3d 1308, 1328 (10th Cir. 1998).

From the foregoing, I agree with Plaintiffs that consideration of the concept of reverse confusion in connection with Mr. Germain's discussion of the actual confusion factor may be helpful if this issue is found to be relevant.   However, the admissibility of this testimony will turn on many factors, including not only relevance but a balancing of

18

the probative value over any prejudice that could result to the jury under Fed. R. Evid. 403, the extent to which Mr. Germain is qualified to render testimony on this issue in regards to the survey, and the extent to which the testimony may improperly invade the province of the Court regarding instructing on the law.   This will, in turn, depend on the particular questions asked of Mr. Germain.   Accordingly, a ruling on this issue at this stage of the case is premature, and UnitedHealth's motion to exclude Mr. Germain's testimony is denied as to this argument..

III.   <u>CONCLUSION</u>

Based upon the foregoing, it is

ORDERED that Defendant UnitedHealth Group Incorporated's Motion to Exclude Testimony of Plaintiffs' Expert Kenneth B. Germain and for Filing Under Seal filed June 17, 2011 (ECF No. 56) is **GRANTED IN PART AND DENIED IN PART** consistent with this Order.   The request to prohibit public access to Mr. Germain's report is also **GRANTED**.   Mr. Germain's report will be restricted to public access at Level One.   *See* D.C.COLO.LCivR 7.2.B.

Dated:   January 12, 2012

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge